**PARA–ORDNANCE MANUFACTURING, INC., Plaintiff–Appellant,**

v.

**SGS IMPORTERS INTERNATIONAL, INC., Defendant/Cross–Appellant.**

Nos. 94–1486, 94–1487.

United States Court of Appeals, Federal Circuit.

Dec. 28, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined March 20, 1996.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, argued for plaintiff-appellant. With him on the brief were Thomas H. Jenkins and Linda A. Wadler. Also on the brief were Marvin Petry and Linda M. Ring, Larson & Taylor, Arlington, Virginia, of counsel.

Sumner C. Rosenberg, Needle & Rosenberg, P.C., Atlanta, Georgia, argued for defendant/cross-appellant. With him on the brief was Nagendra Setty. Also on the brief were Mary Jane Saunders and Roger P. Furey, Arter & Hadden, Washington, DC, of counsel.

Before ARCHER, Chief Judge, CLEVENGER, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL.

Dissenting opinion filed by Chief Judge ARCHER.

SCHALL, Circuit Judge.

Para–Ordnance Manufacturing, Inc. (Para–Ordnance) appeals the June 2, 1994 decision and the June 9, 1994 order of the United States District Court for the Eastern District of Virginia. *Para–Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, Docket No. 94–117–A. Following a bench trial in Para–Ordnance's patent infringement suit against SGS Importers International, Inc. (SGS), the district court determined that all of the claims of United States Patent No. 4,862,618 (the '618 patent) 1) are obvious over the prior art and are therefore invalid under 35 U.S.C. § 103 (1988), and 2) were not infringed by SGS. We affirm the court's determination of invalidity and do not address infringement.

## BACKGROUND

The '618 patent discloses and claims a "conversion kit" for expanding the ammunition capacity of semi-automatic handguns. An expansion in ammunition capacity is accomplished for any particular handgun by providing a widened ammunition magazine to accommodate an increased number of cartridges arranged in a staggered side-by-side configuration. The kit of the '618 patent has a one-piece handgun frame with a grip por-

tion that is wide enough to hold an enlarged magazine.

The '618 patent contains thirteen claims, with one independent claim and twelve dependent claims. Claim 1 reads as follows:[1]

1. A conversion kit to convert a semi-automatic hand-gun of a predetermined round capacity to a hand-gun of a higher round capacity, comprising: a frame made in one piece including an elongated top part having a constant width throughout its length and flat, parallel external side faces, each with an open-ended groove defining guides for the conventional slide of said hand-gun, and a grip downwardly depending at an angle from an intermediate portion of said top part and having a bottom end, said grip having a width greater than the width of said top part with external side faces merging with the external side faces of said top part below said grooves, said frame having a through-bore defining a magazine chamber extending through said grip and through said top art and forming a bottom opening through said bottom end and a top opening through said top part, said through-bore having opposite side faces substantially parallel to the long axis of said top part and defining lower side face portions which are straight and parallel to each other, starting from said bottom end to a zone just below said top part, followed by intermediate face portions which are converging and in turn followed by upper face portions which are substantially parallel to each other, said grooves being uninterrupted from end to end and adapted to slidably retain said slide for reciprocating movement of the latter.

Para–Ordnance, the exclusive licensee of the '618 patent with the exclusive right to sue for infringement,[2] brought suit against SGS, alleging that SGS's Llama IX–C and IX–D handguns infringed the claims of the '618 patent. In addition to denying infringement, SGS countered that the claims of the patent were invalid under 35 U.S.C. § 103. SGS asserted that the claims were obvious from the following items: the Colt 1911 .45 caliber handgun, the Browning Hi–Power 9mm handgun, and the Llama Omni .45 caliber handgun. Of this prior art, the Colt 1911, a frame and magazine similar to the Browning Hi–Power, and a magazine similar to the Llama Omni magazine were before the Patent and Trademark Office during prosecution of the '618 patent. The complete Llama Omni handgun was not.

At the conclusion of the trial, the district court concluded that claim 1 would have been obvious to one of ordinary skill in the art and thus is invalid. The district court based its conclusion of obviousness on the prior art and the testimony of SGS's expert, David Findlay. In determining obviousness, the court found that claim 1 differs from the prior art primarily in the means used to implement the mechanical transition between the handgun frame's widened grip portion and its narrower top portion. These means are found in the claim limitation which refers to "intermediate face portions which are converging."

## DISCUSSION

Under 35 U.S.C. § 103, "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Obviousness may not be established using hindsight or in view of the teachings or suggestions of the inventor. *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1551, 1553, 220 USPQ 303, 311, 312–13 (Fed.Cir. 1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). Additionally, when determining obviousness, the claimed invention should be considered as a whole; there is no legally recognizable "heart" of the invention. *W.L. Gore & Assocs.*, 721 F.2d at 1548, 220 USPQ at 309. In addition, such

---

1. Para–Ordnance concedes on appeal that all claims of the '618 patent stand or fall with claim 1.

2. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874–76, 20 USPQ2d 1045, 1049–50 (Fed.Cir.1991).

secondary considerations of nonobviousness as commercial success, long felt but unsolved needs, failures of others, and copying are considered in determining obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1564, 7 USPQ2d 1548, 1554 (Fed.Cir.1988). Obviousness must be established by clear and convincing evidence. *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1555, 33 USPQ2d 1496, 1499 (Fed.Cir.1995).

The ultimate determination of obviousness is a question of law, which we review *de novo*. *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1182, 20 USPQ2d 1094, 1102 (Fed. Cir.1991). The scope and content of the prior art, differences between the prior art and the claimed invention, the level of ordinary skill in the art, and objective evidence of secondary considerations of patentability are fact determinations. *Id.* What the prior art teaches and whether it teaches toward or away from the claimed invention also is a determination of fact. *In re Bell*, 991 F.2d 781, 784, 26 USPQ2d 1529, 1531 (Fed.Cir. 1993) (citing *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 960–61, 220 USPQ 592, 599–600 (Fed.Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984)). Following a bench trial, we review the findings of fact underlying a determination of obviousness for clear error. *Stiftung*, 945 F.2d at 1183, 20 USPQ2d at 1102. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see also Milmark Servs., Inc. v. United States*, 731 F.2d 855, 857 (Fed.Cir.1984) (same (quoting *United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. at 542)).

On appeal, Para–Ordnance advances four contentions: 1) that the district court focused on the "heart" of the '618 patent instead of the invention as a whole; 2) that the court did not address motivation to modify the prior art; 3) that the court erred in its analysis of secondary considerations of nonobviousness; and 4) that the court used hindsight in its obviousness analysis. We address each of these contentions in turn.

## A.

Para–Ordnance's first contention requires little discussion. In performing its obviousness analysis, the district court properly viewed the claimed invention as a whole, and did not improperly focus on what it perceived to be the heart of the invention. To the extent the court focused on the claimed invention's converging intermediate faces, it did no more than give appropriate attention to the feature of the invention that was central to the obviousness inquiry.

## B.

Para–Ordnance's main argument is that the district court did not address how a person of ordinary skill in the handgun design art would have been motivated to make the modifications to the prior art necessary to arrive at the converging intermediate face portions of the claimed invention. We disagree.

The problem addressed by the claimed "intermediate face portions which are converging" is making the mechanical transition between the widened grip portion and the narrower top portion of the handgun frame of the Para–Ordnance kit. As explained above, the grip portion of the frame is wider than the top portion because the grip must accommodate a widened magazine. Thus, the question is whether, in light of the prior art, it would have been obvious to one of ordinary skill in the art to use a one-piece frame with converging areas at the top of the grip that is claimed in the '618 patent. Put another way, would one of ordinary skill in the art who set out to solve the problem of increasing ammunition capacity, and who had before him in his workshop the prior art, have been reasonably expected to use the solution that is claimed in the '618 patent. We have no difficulty concluding that the answer is yes.

A person of ordinary skill in the art would have had before him various prior art hand-

guns, including the Colt 1911 and the Browning Hi–Power, neither of which teach the concept of convergence to solve the problem confronting the person of ordinary skill in the art. Instead, those references merely teach the use of side faces of a frame to guide magazines snugly into their frames. Those two references, as noted, were before the examiner during prosecution of the '618 patent. The most important prior art available to the person of ordinary skill in the art as he set out to solve his problem—art which was *not* put before the examiner—is the Llama Omni. As seen in the photograph below, the Llama Omni's two grip covers include angled plastic tabs, which converge in the direction of the top of the grip. These tabs function to guide the magazine into its proper position inside the grip. The Llama Omni's magazine, in turn, is widened so that it can hold more cartridges, and it shows convergence at its top portion. This convergence allows cartridges which are inside the magazine in a staggered side-by-side configuration to feed into the narrowed top portion of the magazine and then into the chamber. Thus, not only was convergence in the prior art, but it was there as part of the solution to the need for a handgun with an increased magazine capacity—precisely the same need that is addressed by the Para–Ordnance conversion kit.

# Llama Omni
## Angled Tab

It is true that the plastic tabs inside the Llama Omni grip covers are not part of the frame and that the frame itself, without the grip covers attached, shows no convergence of the kind claimed in the '618 patent. We return, though, to the person of ordinary skill in the art in his workshop. We can presume that he would have carefully examined all the components of the Llama Omni. He no doubt would have examined the gun's magazine, frame, and grip covers as separate pieces. In so doing, he would have seen that the problem of expanding ammunition capacity was solved by widening the magazine so that it could hold more cartridges in a staggered side-by-side configuration. Essentially, at this point, the person of ordinary skill in the art was half way home. All he had to do now was to decide how to merge the widened grip necessarily resulting from the widened magazine with the handgun's top portion. Continuing his examination of the components of the Llama Omni, he no doubt would have attached the grip covers to the frame. Then, holding the Llama Omni with its grip covers attached but with no magazine inside, and looking up into the grip from the bottom, he would have seen, just as we can see from examining Para–Ordnance's Trial Ex. 6a–1 (the Llama Omni), convergence inside a unitary frame, once the grips are attached, as they must be for the handgun to be of any practical use. Indeed, the naked eye could not distinguish this convergence—created by the attachment of the grip covers—from the convergence created by the single piece frame of the '618 patent, except to recognize, of course, that the converging areas in the frame of the '618 patent are broader. Quite simply, the person of ordinary skill in the art would have found himself looking into a converging frame, just as if he were looking into the frame of the Para–Ordnance kit. When he did this, he would have seen the converging frame as the solution to the merging problem.

The district court based its conclusion of obviousness on "both the prior art and the teachings of the prior art ...[,] and also ... general knowledge of one skilled in the art." As just discussed, the court had before it the prior art and what it taught. As far as the general knowledge of one skilled in the art is concerned, the court had before it the testimony of David Findlay, SGS's expert witness. With the prior art before him, Findlay testified that the use of a one-piece frame to provide convergence would have been obvious to one equipped with the knowledge generally available to one skilled in the art. Relying upon Findlay's testimony, the district court determined that a person with the general experience and knowledge of one of ordinary skill in the art of gunsmithing/gun design would have chosen the solution claimed in the '618 patent as a straightforward solution.

■■■ Based upon the foregoing, with particular emphasis on what the Llama Omni reference teaches, we are unable to say that the district court's determination of obviousness is either incorrect as a matter of law or based upon findings of fact that are clearly erroneous. Moreover, the district court's failure to set forth an explicit explanation as to how a person of ordinary skill in the pertinent art would have combined the prior art described by the court in order to arrive at the claimed invention does not require reversal. *See Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1025, 226 USPQ 881, 886–87 (Fed.Cir.1985) (upholding district court's finding of obviousness even though the district court did not explain how prior art teachings could be combined to produce patented invention).

The dissent makes two points. The first is that there was no "motivation or teaching for a person of ordinary skill in the art to use a frame made in a single piece with converging side face portions." As we have demonstrated, the motivation leaps at a person of ordinary skill in the art from thorough inspection of the assembled Llama Omni, inside the frame of which he observes converging side faces which snugly accommodate the prior art magazine. From the decision of the district court, we can, and do, accept the implicit fact-finding that the assembled Llama Omni suggests, if not actually teaches, the marriage of convergent side face portions with and into a single frame piece. While we assume that the dissent must view the assembled Llama Omni differently, we cannot say that the evidence before the court proves its conclusion to be clearly erroneous. We do not believe this is the case, however. As just discussed, there plainly was such motivation and teaching in the prior art.

The dissent's second point is that "the prior art references teach away from making the combination in the claimed invention." In that regard, the dissent takes the position that the Browning Hi–Power "teaches away from using convergence at all" because it supports the magazine "with a rounded frame that does not converge."

■■■ "A reference may be said to teach away when a person of ordinary skill, upon [examining] the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Gurley,* 27 F.3d 551, 553, 31 USPQ2d 1130, 1131 (Fed.Cir.1994). That the Browning Hi–Power does not have a converging frame does not require a finding that it "teaches away." While it does not teach convergence, there is nothing about the Browning Hi–Power to warn a person of ordinary skill against using convergence. *See In re Fine,* 837 F.2d at 1074, 5 USPQ2d at 1599 (citing *W.L. Gore & Assocs.,* 721 F.2d at 1550, 220 USPQ at 311). In other words, there is nothing about the Browning Hi–Power that teaches that convergence should not, or cannot, be used to guide the magazine. Moreover, the teachings of the Browning must be weighed alongside the teachings of the Llama Omni, which, as explained above, teaches the propriety of employing convergence to guide the frame. *See In re Young,* 927 F.2d 588, 591, 18 USPQ2d 1089, 1091 (Fed.Cir.1991).

## C.

■■■ Para–Ordnance also argues that the district court erred in analyzing secondary considerations of nonobviousness. As noted

above, such considerations include commercial success, long-felt but unsolved needs, failures of others, and copying. *See Graham*, 383 U.S. at 17–18, 148 USPQ at 467; *Avia Group Int'l, Inc.*, 853 F.2d at 1564, 7 USPQ2d at 1554. The district court considered the evidence presented in relation to the secondary considerations and concluded that there was no commercial success, no long-felt but unsolved need, and no copying that favored a finding of nonobviousness. Determining whether these considerations exist in a given case is a factual inquiry. *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 989–90, 6 USPQ2d 1601, 1607 (Fed.Cir.1988). This court gives great deference to the district court's decisions regarding credibility of witnesses. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1580, 27 USPQ2d 1836, 1842 (Fed.Cir.1993) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 575–76, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985)). Given this deferential standard and the strong showing of obviousness discussed above, we cannot say that the district court's conclusions regarding secondary considerations are clearly erroneous. *See Ryko Mfg. Co. v. Nu–Star, Inc.*, 950 F.2d 714, 719, 21 USPQ2d 1053, 1058 (Fed.Cir.1991) (the weight of secondary considerations may be of insufficient weight to override a determination of obviousness based on primary considerations); *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768, 9 USPQ2d 1417, 1426 (Fed.Cir.1988) (secondary considerations "must be considered, [but] they do not control the obviousness conclusion" (citations omitted)), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989).

### D.

Finally, in asserting that the district court used hindsight, Para–Ordnance challenges the court's reliance on one of SGS's trial exhibits (Exhibit 77).[3] Para–Ordnance argues that Exhibit 77 improperly suggested to the court that the claimed invention's converging intermediate face was the most obvious way to form the mechanical transition

between the invention's widened grip portion and its narrower top portion.

■ We agree with Para–Ordnance that Exhibit 77 improperly suggested that the claimed invention's converging intermediate face was the most obvious way to form the mechanical transition between the invention's widened grip portion and its narrower top portion, and that the exhibit therefore improperly suggested the finding of obviousness which SGS sought to obtain at trial. Because Exhibit 77 was improperly suggestive, and therefore, in the circumstances of this case, may have constituted a type of hindsight analysis, we have given no weight to it or to the testimony relating to it. Having carefully reviewed the record, however, we hold that the district court's obviousness analysis was proper in every other respect, and that the remainder of the evidence— discussed above—supports the court's finding that the claims of the '618 patent are obvious from the prior art.

### CONCLUSION

Based upon the foregoing, we hold that the district court's finding of invalidity is neither incorrect as a matter of law nor based upon findings of fact that are clearly erroneous.

### COSTS

Each party shall bear its own costs.

### AFFIRMED

ARCHER, Chief Judge, dissenting.

The obviousness analysis in this case is a classic example of hindsight. The district court clearly applied hindsight by taking two pieces of prior art, neither of which suggests a frame in a single piece with converging sides, and finds that such a frame would be obvious "even to one not [s]killed in the art." The majority similarly applies hindsight by making the same conclusion based on the same prior art. Other than the invention disclosed in the patent, there is no motivation or teaching to combine converging sides in a

---

**3.** Exhibit 77 is a drawing depicting a rear-view cross section of a handgun frame. The drawing shows all of the elements of the '618 patent except the convergence of the side faces. The area where the side faces converge is replaced by a blank box.

single piece frame; and in view of the strong secondary considerations, nonobviousness is the proper result. I, therefore, dissent.

The '618 patent relates to an apparatus for converting the well-known .45 caliber Colt 1911 handgun from a 7–round capacity to a 13–round capacity magazine (or clip). Claim 1, the only independent claim, describes a frame made in a single piece with a through-bore defining a magazine chamber with converging side face portions. The specification describes the primary function of the converging side faces as providing a solid connection between the frame and the slide as well as an uninterrupted guide for the insertion of a magazine.

The district court deemed the converging side face portions as the "heart" of the invention. As a result, the court sought to determine whether prior art existed that would render this "convergence" obvious. The court focused on two prior art handguns, the Browning Hi–Power and the Llama Omni. The Browning Hi–Power has straight side faces with no convergence of any kind. Instead, the handgun utilizes an open-faced frame with a rounded front handle portion that supports the insertion of the magazine. The Llama Omni also has an open-faced frame with no convergence. However, the handgun does utilize a converging strip on the grip covers. Neither of these prior art references therefore uses converging side faces on the frame to provide a solid connection or to guide the insertion of the magazine.

For a combination of prior art references to render an invention obvious, "[t]here must be some reason, suggestion, or motivation found in the prior art whereby a person of ordinary skill in the field of the invention would make the combination." *In re Oetiker,* 977 F.2d 1443, 1447, 24 USPQ2d 1443, 1446 (Fed.Cir.1992). That one must point to some reason, suggestion, or motivation to make a combination is not to say that the teaching must be explicit, but in order to render an invention obvious by the combination of prior art references, the record must contain some basis to rebut the presumption of validity. *See, e.g., Vandenberg v. Dairy Equip. Co.,* 740 F.2d 1560, 1568, 224 USPQ 195, 198

(Fed.Cir.1984). A finding of obviousness on any other basis would constitute hindsight. *See Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed.Cir. 1985) ("When prior art references require selective combination by the court to render obvious a subsequent invention, there must be some reason for the combination other than the hindsight gleaned from the invention itself.").

Neither the district court nor the majority points to any motivation or teaching for a person of ordinary skill in the pertinent art to use a frame made in a single piece with converging side face portions. A simple invention may be patentable, even if the invention comprises the combination of features known in the art, provided the combination itself is not obvious. *See In re Sponnoble,* 405 F.2d 578, 585, 160 USPQ 237, 243 (CCPA 1969) ("A patentable invention, within the ambit of 35 U.S.C. § 103, may result even if the inventor has, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the results inherent in their use.") (emphasis omitted). Here, however, the claimed invention would not even result from a combination of the cited references. As the district court and the majority recognize, neither the Browning Hi–Power nor the Llama Omni utilizes a single frame with converging side faces. Only the Llama Omni has any convergence, and its converging elements are formed by the grip covers, not the frame. "The mere fact that elements of [an invention] may be found in various [references] does not necessarily negate invention." *In re McKenna,* 203 F.2d 717, 721, 97 USPQ 348, 351 (CCPA 1953). Nevertheless, the district court and the majority find that moving the convergence from the grip covers to the frame would have been obvious.

The district court recited two grounds for its obviousness finding. The first was the court's observation of Exhibit 77, a line drawing profiling appellant's invention but omitting the convergence of the side faces, and the second was the testimony of the appellee's expert, Mr. Findlay. The district court stated:

[Exhibit] 77 is a useful way to think about it. Indeed, the Court spent some time last night making sketches of it. Almost infinite variety of configurations one could pick. And the obvious one, even to one not [s]killed in the art, would be to converge [the frame].

But in any event, I'm persuaded by Mr. Findlay's testimony in that regard.

The majority recognizes that Exhibit 77 was improperly suggestive and may have constituted a hindsight analysis, and thus gives no weight to the exhibit. Yet, the majority nonetheless concludes that the rest of the district court's obviousness analysis was proper. The analysis on which the majority relies, however, comprises nothing more than the testimony of Mr. Findlay, who used Exhibit 77 as the basis for his position on obviousness.[1] Thus, the majority, having rejected Exhibit 77, should also have given no weight to the testimony of Mr. Findlay. If such evidence is excluded, the district court's obviousness finding is clearly not sustainable. There is an absence of any motivation or teaching in the prior art to combine the prior art references, and there is no other probative evidence relating to obviousness.

After essentially rejecting the district court's obviousness analysis based on the prior art, the majority proceeds to construct its own analysis of the prior art to find that the invention would have been obvious. The majority suggests that motivation for the claimed invention comes from looking into the Llama Omni with its grip covers attached but with no magazine inside and that convergence would be seen. The problem with this is that the convergence is still on the plastic handles, not the frame. To say as the majority does that viewing the Llama Omni convergence would suggest converging the frame is in my view not the teaching, suggestion, or motivation necessary to overcome the presumption of validity. It is not clear and convincing evidence of obviousness.

In addition, the record below supports nonobviousness because the prior art references teach away from making the combination in the claimed invention. For example, the district court recognized an "[a]lmost infinite variety of configurations one could pick" to form a handgun with sides that support a large capacity magazine. Supporting this is the fact that both the Browning Hi–Power and the Llama Omni handguns form the mechanical transition between the widened grip portion and the narrower top portion in some manner different than the converging side face portions used in the claimed invention. The Browning Hi–Power teaches away from using convergence at all, achieving support for the magazine through a rounded frame that does not converge. The Llama Omni utilizes three separate pieces to form the convergence. In addition to the two ways demonstrated by the prior art, the appellee's own expert testified that there was an infinite range of possibilities to achieve the desired result. Thus, the evidence discloses a variety of ways to connect the frame with the slide and to guide the insertion of a magazine. In sum, with no motivation or teaching to combine converging side face portions with a single piece frame, and with the evidence of teaching away, the record supports a conclusion of nonobviousness. Any contrary conclusion would be based on hindsight.

The secondary considerations of nonobviousness serve "as insurance against the insidious attraction of the siren hindsight." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1553, 220 USPQ 303, 313 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). Indeed, "[e]vidence of secondary considerations may often be the most probative and cogent evidence [of nonobviousness] in the record."

---

1. The appellee's expert always explained his position on obviousness in terms of Exhibit 77. Even though the expert also made comparisons of the Browning Hi–Power and the Llama Omni with the patented invention, in proffering obviousness the expert only gave conclusory reasons why one skilled in the art would choose to make the combination of the prior art references. The appellant's expert, in contrast, presented more than mere conclusory statements. The expert explained that one skilled in the art of handgun manufacture would not have necessarily chosen to create a convergence in the frame based on manufacturing considerations, noting that the preferred embodiment of the patented invention utilizes investment casting, whereas the art of handgun manufacture had predominately relied upon electro-chemical machining.

*Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir. 1983). The appellant points to four secondary considerations to support nonobviousness: failure of others, long-felt need, commercial success, and copying.

The district court rejected failure of others as an indicium of nonobviousness because it was the inventor who previously attempted but failed to develop a device to convert the Colt 1911. The district court, however, said nothing about the fact that the manufacturer of the Colt 1911 had also attempted but failed to expand the magazine capacity of the Colt 1911. The record shows that it had not only tested extended length single stack magazines but also staggered magazines for expanded magazine capacity, but found them inadequate and never developed either alternative. Such a failure of others to do that which the patent claims is strong evidence of nonobviousness. *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1054, 5 USPQ2d 1434, 1440–41 (Fed.Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

The district court also found no persuasive evidence of a long-felt need for expanded capacity magazines for the Colt 1911. The court made this finding based primarily on the fact that in 1986 the U.S. military converted from the Colt 1911 to the Beretta, a nine millimeter handgun with a 15–round capacity. As the district court recognized, the Colt 1911 had been used by the U.S. military at least since 1911 but neither the Colt manufacturer nor any other manufacturer had developed a .45 caliber handgun with an expanded capacity magazine. There was obviously a need at the time of the conversion to the Beretta handgun, and even the district court recognized such a need was present from the mid- to late–1980s. A long-felt need is also persuasive evidence of nonobviousness.

Although the district court found that there had been commercial success, the court rejected this secondary consideration because of the absence of "any evidence to show that this commercial success is related to an invention that the patentee claims to have made." In discussing commercial success in the obviousness analysis, the court correctly pointed out that there must be a nexus between the sales and the merits of the invention. *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151, 219 USPQ 857, 861 (Fed.Cir.1983). *But see Ryko Mfg. Co. v. Nu–Star, Inc.,* 950 F.2d 714, 719, 21 USPQ2d 1053, 1058 (Fed.Cir.1991) ("[P]rima facie evidence of nexus is established if there was commercial success and if the invention disclosed in the patent was that which was commercially successful."). The district court pointed to advertising and the sponsorship of competitive shooting teams as the principal reasons for appellant's commercial success. While there were contradictory statements in the record as to the reasons for the commercial success, I am not persuaded that either of these activities overcomes the evidence that commercial success was the result of the invention claimed in the '618 patent being the first to enable an expansion of the magazine capacity for the Colt 1911. Further, appellee's attack upon the commercial success of the patented invention is less credible where appellee makes or sells an exact copy of the patented invention as discussed below. Finally, even if the district court was correct in finding other reasons for commercial success, the other secondary considerations discussed are overwhelming evidence of nonobviousness.

The district court also found evidence of copying but rejected this consideration. Copying of a patented invention is indicative of nonobviousness. *Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1000, 228 USPQ 562, 565 (Fed.Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). The district court's conclusion on this point is also erroneous. The appellee conceded at trial that the accused handgun reads on one or more claims of the '618 patent, only disclaiming infringement because of the wording of the preamble. Appellee's frames, grip covers, and magazines are clearly exact copies except for the location of the magazine catch hole, yet the magazines are compatible for either handgun. In addition to manufacturing handguns that read directly on the '618 patent claims, appellant alleges, and the record does not indicate otherwise, that appellee also converted Llama models that were

clones of the Colt 1911 into expanded capacity handguns (for the conversions, the frame, grip covers, and magazine of the Llama IX–A and IX–B were simply replaced to produce handguns covered by the claims of the patented invention). Appellee, therefore, may have utilized the very conversion kit methodology set forth in the preamble of the claims. The evidence of copying provides persuasive support for nonobviousness.

For all of the reasons stated above, the conclusion is inescapable that the district court applied hindsight and failed to give adequate weight to the secondary considerations in reaching its obviousness determination. Unfortunately, the majority opinion now makes the same mistake. Accordingly, I dissent.