NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1054
(Serial No. 08/886,349)

IN RE C. DOUGLASS THOMAS

_____

DECIDED:  September 30, 2005

_____

Before CLEVENGER, RADER and DYK, <u>Circuit Judges</u>.

PER CURIAM.

C. Douglass Thomas appeals from the November 18, 2003, decision of the Board of Patent Appeals and Interferences (Board) of the United States Patent and Trademark Office (PTO) sustaining the patent examiner's rejection of pending claims 1-23 and 25-51 of Application No. 08/886,349 (the '349 application).  The examiner rejected all claims under 35 U.S.C. § 103 as being obvious in light of the prior art.  We <u>affirm</u>.

I

The '349 application relates to a computer implemented method for performing a survey. Claim 1 is representative of the claims and recites:

1. A computer implemented method for performing a survey, comprising:
    (a) registering participants over a network to form a database of registered survey participants, said registering (a) being performed by participants completing an on-line registration form;
    (b) receiving a survey in an electronic format at a central server, the survey having survey questions;
    (c) automatically selecting a group of registered survey participants for participation in the survey from the database of registered survey participants;
    (d) electronically providing the survey over the network from the central server to the registered survey participants in the group selected, said electronically providing (d) includes at least
        (d1) forming a survey notification message, the survey notification message indicating that the survey is available to recipients of the survey notification message,
        (d2) obtaining electronic mail addresses for the registered survey participants in the group selected, and
        (d3) electronically sending the notification message to the registered survey participants in the group selected at their electronic mail addresses, the survey notification message informs the registered survey participants to obtain and complete the survey by accessing a predetermined world wide web location;
    (e) subsequently electronically receiving, at the central server, responses over the network to the survey questions from the registered survey participants in the group selected; and
    (f) processing the responses at the central server to determine survey results.

Essentially, the patent claims a traditional survey that is administered online. Claim 1 requires that the participants are registered via an online registration form, creating a database of participants from which participants for a particular survey are selected. The survey is administered by sending an email to those selected participants indicating that it is available at a predetermined web location. The responses are

05-1054                              2

electronically received at a central server where they are processed to determine results.

Representative claim 38 describes a similar process, with the limitation that the survey is produced "at an Internet-based survey manager based on survey information provided by a survey requestor." Claim 38 reads as follows:

38. A computer implemented method for performing an on-line survey over the Internet, said method comprising:
a) producing a survey at an Internet-based survey manager based on survey information provided by a survey requestor, the survey information including at least questions for the survey, answer choices to the questions, and a target audience indication, the survey being produced having an on-line format and including at least the questions and the corresponding answer choices;
b) providing the survey at the Internet-based survey manager so that those participants in the target audience are able to take the survey on-line by interaction with the Internet-based survey manager over the Internet;
c) tabulating responses from the participants that have taken the survey on-line through interaction with the Internet-based survey manager; and
d) generating a survey report from the responses.

In addition, claims 39 and 45 specifically require that survey information be provided by the survey requestor "through on-line interaction," allowing the survey manager to define the survey and identify the target audience. Claims 40 and 46 additionally require that the target audience indentification involves a selection of one or more participant categories.

Finally, representative claim 49 recites the same methods of claims 1 and 38 in means-plus-function form. Representative claim 49 reads as follows:

49. A survey system, comprising:
a database of registered survey participants;
means for registering users with an on-line questionnaire provided by a registration web page provided on the Internet, wherein the registering by the users with the on-line questionnaire provides self-

represented participant information provided by the users for the particular purpose of participating in surveys;

    means for storing the self-represented participant information in the database of registered survey participants;

    means for thereafter automatically selecting, from the database, a group of registered survey participants for participation in an on-line survey, the on-line survey having a plurality of survey questions;

    means for notifying the registered survey participants in the selected group of availability of the on-line survey at a survey web page on the Internet; and

    means for providing the on-line survey at the survey web page on the Internet.

The examiner found that all claims were obvious in light of three sources of prior art: Online Market-Research Venture Offers Freebies to Respondents, Am. Marketplace, Jan. 11, 1996 (Greenfield Online); Scott G. Dacko, Data collection should not be manual labor, 29 Marketing News, Aug. 28, 1995, at 31 (Dacko); and Pamela L. Alreck, The Survey Research Handbook 456 (2d ed. 1995) (Alreck).

Mr. Thomas appealed the examiner's decision to the Board. On February 23, 2004, the Board affirmed the rejection of all the claims. Ex parte C. Douglass Thomas, No. 2003-0238 (Bd. Patent Appeals & Interferences Feb. 23, 2004) ("Decision on Appeal"). Mr. Thomas requested a rehearing, which the Board granted to the extent that it reconsidered, but ultimately sustained, its previous decision. Ex parte C. Douglass Thomas, No. 2003-0238 (Bd. Patent Appeals & Interferences July 23, 2004) ("Decision on Rehearing"). Mr. Thomas timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

II

Obviousness is a legal conclusion based on underlying fact findings. In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000). The Board's legal conclusions are reviewed de novo, but its factual determinations are reviewed for substantial evidence,

05-1054                    4

that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1312 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (internal quotations omitted)). The presence or absence of a motivation to combine references in an obviousness determination, as well as what a reference teaches, are questions of fact. Id. at 1316; Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc., 73 F.3d 1085, 1088 (Fed. Cir. 1995).

III

The examiner rejected Claim 1 as obvious in light of Greenfield Online and Dacko, finding that Greenfield Online disclosed every element of Claim 1, except for forming and sending a "notification message" via electronic mail, and that this element was disclosed by Dacko. Mr. Thomas argued before the Board that there was no motivation to combine the references, as is required by In re Rouffet, 149 F.3d 1350, 1355 (Fed. Cir. 1998). However, the Board found that since Greenfield Online did not teach how to notify registered participants as to research studies, which is necessary in any survey, it would have been obvious for a skilled artisan to select a known method of notification. Decision on Appeal at 4. Furthermore, since Dacko provides methods of notification of surveys via email, particularly email containing an Internet address, the Board found that "the motivation for combining is in the references themselves." Id.

Mr. Thomas argues that the Board erred in finding that there was a motivation to combine Greenfield Online and Dacko. Mr. Thomas notes that Dacko suggests eight different methods of computer-based data collection, any one of which could be used to notify respondents, and that it does not suggest the particular desirability of email

notification.[1] However, for an obviousness analysis, even the fact that "a specific embodiment is taught to be preferred is not controlling, since all disclosures of the prior art, including unpreferred embodiments, must be considered." Merck & Co., Inc. v. Biocraft Labs., Inc., 874 F.2d 804, 807 (Fed. Cir. 1989) (internal quotations and alterations omitted). More importantly, the reference in Dacko to email notification specifically says that "researchers can send potential respondents e-mail prompting them to access an [Internet] address that contains an interactive survey." An "interactive survey" at an Internet address is exactly the sort of survey discussed in both Greenfield Online and the '349 application. Thus, substantial evidence supports the Board's finding of a motivation to combine the Greenfield Online and Dacko references.

In affirming the rejection of claims 38-48, which contain an additional limitation that the survey be produced "at an Internet-based survey manager based on information provided by the survey requestor," the Board found that although Greenfield Online does not explicitly state as such, the organization it describes is "an Internet-based survey manager" and that it "would have been obvious to use information provided by the client to assure that the survey best represented the needs of the client." Decision on Appeal at 10.

However, Mr. Thomas argues that the Board erred in finding that Greenfield Online is an "Internet-based survey manager," claiming that the phrase refers to a computer or computer software, not a person or a company. On rehearing, the Board

---

[1] Thomas argues that the disclosure of multiple methods means that Dacko "teaches away" from use of one of the methods. However, a reference "teaches away" when it states that you cannot or should not use a specific embodiment. See Para-Ordnance Mfg., 73 F.3d at 1090. Nothing in Dacko indicates that you should not use email notification with online surveys.

noted that there is no limitation in the claim that "requires that the Internet-based survey manager be a software module or computing apparatus." Decision on Rehearing at 6. Indeed, Mr. Thomas has pointed to no evidence indicating that "Internet-based survey manager" refers only to a computer or computer software and does not present any arguments that his is the only reasonable interpretation, or even that it is a preferable interpretation.

Further, Mr. Thomas argues that claim 38 speaks to the online production of surveys, while Greenfield Online only teaches the online administration of surveys. However, claim 38 recites a method for "performing an on-line survey over the Internet," comprising "producing a survey at an Internet-based survey manager" and "providing the survey . . . so that those participants . . . are able to take the survey on-line." Clearly the overall performance of the survey must be online and the participants must take the survey online. However, the language of the claim, interpreted broadly, does not require that the survey be produced on online. Indeed, the inclusion of the term "on-line" in relation to "performance" and "tak[ing] the survey" indicates that it was not necessary in relation to the production of the survey.

Even if claim 38 does require that the survey be produced online, this is disclosed by Dacko, which notes that online surveys can incorporate "branching questions," such that the particular survey given to each respondent is tailored to his previous responses. Thus, the individual surveys are created or produced online during the course of survey administration. In addition, Greenfield Online suggests online production when it notes that "[t]raditional research studies that previously took five to 10 business days will now be designed, administered and analyzed almost overnight."

Greenfield Online (emphasis added).  If the purpose of online research is improved efficiency, this can be aided not merely by online administration, but also online design and analysis.

Mr. Thomas also argues that claim 38 requires that a customer interact online with an Internet-based survey manager to provide the information required to design the survey.  He claims that this is not disclosed by the prior art.  However, as noted by the Board, Greenfield Online states that surveys are produced for clients who request them; therefore, information must be obtained from the client in order to design the survey.  Decision on Appeal at 9-10.  In addition, Alreck states that a survey involves specifying information requirements.  Thus, the prior art discloses production of a survey based on information provided by the survey requestor.  In addition, as claim 38 does not require that the production of the survey be online, neither must the interaction with the customer be online.[2]

Claims 39 and 45 do contain the additional limitation that survey information be received "from a survey requester through on-line interaction."  Mr. Thomas argues, as he did in relation to claim 38, that the "on-line interaction" requirement is not disclosed by the prior art.  However, since Greenfield Online and Dacko "suggest that the Internet allows for the quick communication of data," the Board reasoned that "it would have been obvious for the client to send Greenfield the information necessary to produce the survey via on-line interaction."  Decision on Rehearing at 7-8 (emphasis in original).  Mr.

---

[2]      Indeed, since claim 39 specifically requires that survey information be received through online interaction, it is reasonable to assume that this is not required in claim 38.  However, even if claim 38 does require such online interaction, it is obvious in light of the prior art, as discussed infra.

Thomas provides no arguments or evidence to indicate why this is not so, and we agree that it would have been obvious to obtain the survey information via online interaction.

Claims 39, 40, 45, and 46 also contain the additional requirement that audiences be targeted online, which Mr. Thomas argues is not disclosed by the references. However, the Board found that although Greenfield Online "does not explicitly state that the target audience is identified on-line," both Greenfield Online and Dacko "suggest use of the Internet for other communications" and therefore "it would have been obvious to the skilled artisan to identify the target audience on-line as well." Decision on Appeal at 12-13. In addition, while Alreck discloses targeting of audiences, noting that a survey includes identification of the relevant population and selection of particular samples, Greenfield Online discloses a registered base of respondents and a hardware and software system connected to the Internet; thus, it is obvious to select a sample of the relevant population, i.e. target audiences, through this database connected to the Internet.

Finally, Mr. Thomas argues that the Board erred in finding that the prior art discloses "the selection of one or more participant categories for a target audience," as required by claims 40 and 46.[3] However, as noted by the Board, Greenfield Online discloses focus groups which are "groups of people . . . that fall into certain participant categories." Id. at 14. Similarly, Alreck discloses use of selected samples of identified populations. Again, as selection of the target audience online is obvious in light of the

---

[3] Mr. Thomas argues that Greenfield Online is restricted to "three available venues," namely the World Wide Web, the Microsoft Network, and Prodigy. However, it is difficult to see what any venue restriction has to do with whether the references disclose selection of participant categories of a target audience.

three references, selection of focus groups, i.e. "participant categories," is similarly obvious.

Mr. Thomas argues that claims 49 through 51 recite means-plus-function elements, a fact that Mr. Thomas asserts was ignored by the examiner. However, Mr. Thomas concedes that the examiner considered the function limitations of the claims. In addition, in his answer to the Board, the examiner stated that the only structures disclosed in the specification "are a computer and a network capable of supporting Internet operations," and that one of ordinary skill in the art would have understood the disclosure of online surveys conducted over the Internet as encompassing these structures. Mr. Thomas points to no additional function, structure, or other claim limitation ignored by the examiner or the Board. Thus, the examiner, and the Board, properly considered the means-plus-function limitations of claims 49 and 51.

In conclusion, Mr. Thomas has failed to show that the Board's factual determinations were unsupported by substantial evidence. In addition, we agree with the Board's construction of the claim terms and its determination that all pending claims of the '349 patent were obvious in light of the prior art. Therefore, we affirm.