NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1370
(Serial No. 09/401,198)

IN RE MICHAEL C. SCROGGIE, MICHAEL E. KACABA,
DAVID A. ROCHON and DAVID M. DIAMOND
(Real Party Interest Catalina Marketing Corporation)

_____

DECIDED:  March 13, 2006

_____

Before MAYER, RADER, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST.  Opinion concurring-in-part and dissenting-in-part filed by Circuit Judge MAYER.

PROST, Circuit Judge.

Michael C. Scroggie, Michael E. Kacaba, David A. Rochon, and David M. Diamond (collectively, "Scroggie") appeal a decision by the United States Patent and Trademark Office Board of Patent Appeals and Interferences (the "Board") affirming the final rejection of claims 41-67 of U.S. Patent Application Serial No. 09/401,198 (the

"'198 application") as obvious under 35 U.S.C. § 103 in view of a single prior art reference, U.S. Patent No. 5,933,811 ("Angles"). Ex parte Scroggie, Appeal No. 2004-0738, Paper No. 33 (B.P.A.I. Nov. 30, 2004) ("Board Decision"). Because the Board erred in construing the term "generating page data" in claims 41-49, we reverse the Board's decision with respect to those claims, but because the Board correctly construed the term "personalized web page" in claims 50-67, we affirm the Board's decision with respect to those claims.

## BACKGROUND

On September 23, 1999, Scroggie filed the '198 application. The claims of the '198 application are generally directed to a system and method for generating a web page. In claims 41-49, "generating page data" is both a limitation of the claims and a part of the preamble, whereas for claims 50-67, "generating a web page" is only part of the preamble. Additionally, claims 50-67 contain the limitation "personalized web page." Claims 41 and 50 are representative with respect to each of those limitations which are the focus of the parties' dispute in this case.

41. A computer implemented method for generating a web page, said method comprising the steps of:
    transmitting a prompt for personal information from a main computer to a personal computer over a computer network;
    transmitting personal information data from said personal computer to said main computer over said computer network in response to said prompt; and
    generating page data defining a web page based upon said personal information data.

50. A computer method for generating a web page, said method comprising the steps of:
    transmitting a prompt for personal information from a main computer to a personal computer;
    receiving at said main computer personal information data transmitted from said personal computer; and

transmitting from said main computer to said personal computer web page data for displaying a <u>personalized web page</u>, said personalized web page based upon said personal information data.

(emphases added).

The '198 application's specification, however, appears to be more narrow than its claims because it is generally directed to a method for sending shopping incentives (e.g., coupons) to customers over the internet. The coupons can be transmitted to the customer in various ways, including by e-mail and by embedding the coupons in a web page. The coupons can then be printed by the customer and used at retail stores.

In the decision on appeal, the Board relied solely on Angles as establishing a prima facie case of obviousness of claims 41-67.[1] In general, Angles discloses a system and method for delivering customized electronic advertisements in an interactive communication system. The Board found that the first two elements of representative claim 41, i.e., the two transmitting steps, were clearly taught or suggested by Angles. Scroggie does not disagree. Additionally, the Board found that the examiner had not explained where, in Angles, the third element, "generating page data defining a web page based upon said personal information data" was either taught or suggested. The Board, however, found that column 4, lines 7-9, of Angles discloses that advertisements sent to a consumer's computer may contain hyper-links to other information and that the "hyper-links typically direct the user's Internet browser to access different websites on

---

[1] Additionally, the Board found that the examiner's rejection of claims 32-40 was improper because the examiner did not provide a convincing reason why the disclosure in Angles obviated the phrase "assigning a web page address to said web page based upon said personal information," as found in those claims. Therefore, the Board reversed the examiner's rejection with regard to claims 32-40 and therefore, Scroggie has not appealed the Board's decision with respect to those claims.

the Internet." Board Decision, slip op. at 5. Thus, the Board concluded that since the advertisements sent to a consumer in Angles are based on personal information of the consumer and the hyper-links in the advertisement lead to a web page which is generated from some page data, "one may fairly interpret this disclosure as a teaching of 'generating page data defining a web page based upon said personal information.'" Board Decision, slip op. at 8.

In regard to claims 50-67, the Board found that the hyper-links in Angles suggest the "personalized web page" limitation because those hyper-links lead to a web page as a result of personal information. Thus, the Board concluded that the web pages displayed could be considered "personalized web pages" as that term is used in claims 50-67.

On Scroggie's request for rehearing, the Board reaffirmed its conclusion that Angles teaches the third limitation of claim 41, "generating page data defining a web page based upon said personal information." The Board reiterated that "if the advertisements, which are sent to a consumer based on personal information, are said to be 'page data' (i.e., the advertisement page contains data including a hyperlink) and the hyperlink (the hyperlink defining a web page since clicking on this hyperlink will send the user to that web page) in that page data is directed to a certain web page, it can be reasonably said that Angles generates page data defining a web page based on personal information, as claimed." Ex parte Scroggie, Appeal No. 2004-0738, Paper No. 33, slip op. at 3-4 (B.P.A.I. Feb. 10, 2005).

05-1370                                    4

DISCUSSION

Obviousness is a legal question based on underlying factual findings. See e.g., In re Mayne, 104 F.3d 1339, 1341 (Fed. Cir. 1997). What a reference teaches, including whether it teaches toward or away from the claimed invention, is a question of fact. Para-Ordnance Mfg. v. SGS Imps. Int'l, 73 F.3d 1085, 1088 (Fed. Cir. 1995). This court upholds the Board's factual findings unless they are unsupported by substantial evidence. In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000).

Claim construction, however, is a question of law reviewed de novo on appeal. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Since during prosecution, claims must be given their "broadest reasonable interpretation," this court reviews the Board's interpretation of disputed claim language to determine whether it is "reasonable" in light of all the evidence before the Board. In re Hyatt, 211 F.3d 1367, 1372 (Fed. Cir. 2000); In re Morris, 127 F.3d 1048, 1055 (Fed. Cir. 1997).

Scroggie contends that the Board incorrectly concluded that Angles teaches or suggests limitations defined by claims 41-67. He argues that a hyper-link is not a web page, but rather a logical address which is clearly known on the Internet. With respect to claims 41-49, he asserts that the inclusion of hyper-links in the advertisement sent to the consumer does not generate page data (i.e., result in page data being generated). Consequently, when a consumer clicks on the hyper-link, it does not result in "generating page data defining a web page based upon said personal information data," as recited in claim 41. This is so because the page data, contemplated by the hyper-links in the advertisements disclosed in Angles, already exist in the server computer

having the logical address specified in the hyper-link.  Scroggie contends that "[w]hen the user clicks [on] the link in the advertisement, his computer sends a prompt to the corresponding address, and the computer at that address responds with a data file . . . [i.e., a web page], based upon data pre-existing at that computer."  (Appellant's Br. 17.) Thus, Scroggie asserts that the Board erred in finding that Angles discloses this limitation because it does not teach or suggest "generating page data defining a web page based upon said personal information data."

The Director of the United States Patent and Trademark Office (the "Director") asserts that Angles teaches selecting custom advertisements to send to a consumer based on a consumer's personal information and that those custom advertisements can contain hyper-links.  The Director argues that since the hyper-links are custom-selected and included in the electronic page that shows up on the user's screen, they are "page data."  Also, since the hyper-links provide a direct link to a web page, they can reasonably be said to be "page data" that "define a web page" as required by the claims.  Additionally, the Director argues that there is no limitation in the claim that prevents the customized page data from "preexisting," rather the only requirement of the claim is that it be customized for that consumer.  Thus, when the disclosure in Angles teaches "selecting" customized advertisements which contain hyper-links to other web pages, this is sufficient to teach the "generating page data" element of claims 41-49.

We disagree.  The term "generating page data" means that the page data is "generated," not merely "selected."  Both the Board and the Director apply an unreasonable construction to the term "generating page data" such that Angles, which teaches "selecting" advertisements which contain hyper-links can somehow teach or

suggest "generating." Generating does not imply a mere selection of pre-existing page data, but rather the creation or origination of such data. Therefore, the Board's construction of "generating page data" was unreasonable and its conclusion that Angles teaches that limitation is thus unsupported by substantial evidence.

Additionally, in regard to independent claim 50, Scroggie argues that although "Angles' advertisement data may depend upon personal information stored at Angles' advertising provider computer. . . . Angles does not show . . . that data stored at some address specified in a hyper-link in an advertisement transmitted to Angles' consumer computer depends upon personal inforation [sic]." (Appellant's Br. 18.) Thus, Scroggie's argument focuses on the term "personalized web page" as used in claims 50-67.

The Director again argues that Scroggie is improperly reading a limitation into those claims because the term "personalized web page" can reasonably be construed to cover Angles's disclosure of custom-selected web pages which are accessed by clicking on the hyper-links within the advertisements that are sent to the consumer. Thus, the web page is "personalized" because it is custom-selected for the consumer based on personal information provided by the consumer.

We agree with the Director. The term "personalized web page" as used in claims 50-67 can reasonably be read to cover at least two types of personalization. One type of personalized web page is "personalized" because the contents of the web page transmitted to the consumer are themselves specific to the consumer. Another type of personalized web page is "personalized" because the web page itself, although not necessarily specific to an individual consumer, was chosen to be transmitted, via a

hyper-link, to that consumer based on the consumer's personal data. Because the term "personalized web page" can reasonably be construed to mean either type of "personalized," and because Angles discloses the latter type, Angles teaches this limitation of claims 50-67. Therefore, we will affirm the Board's decision with respect to those claims.

## CONCLUSION

Because we find that the Board's construction of the term "generating page data" was unreasonably broad, we find that Angles does not teach or suggest "generating page data" as used in claims 41-49. Additionally, because we find that the Board's construction of the term "personalized" in claims 50-67 was not unreasonable, the Board's finding that Angles teaches or suggests the "personalized web page" limitation in those claims is supported by substantial evidence. Accordingly, we reverse the Board's decision with respect to claims 41-49, and affirm the Board's decision with respect to claims 50-67.

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1370
(Serial No. 09/401,198)

IN RE MICHAEL C. SCROGGIE, MICHAEL E. KACABA,
DAVID A. ROCHON and DAVID M. DIAMOND
(Real Party In Interest Catalina Marketing Corporation)

MAYER, Circuit Judge, concurring-in-part and dissenting-in-part.

I agree that the decision of the Board of Patent Appeals and Interferences, Ex parte Scroggie, Appeal No. 2004-0738, Paper No. 33, at 5-6 (B.P.A.I. Nov. 30, 2004) ("Board Decision"), should be affirmed with respect to claims 50-67 of U.S. Patent Application Serial No. 09/401,198 ("the '198 application"). However, because we review the board's interpretation of disputed claim language to determine whether it was reasonable in light of the evidence before the board, see, e.g., In re Hyatt, 211 F.3d 1367, 1372 (Fed Cir. 2000), and because we review the factual findings underlying the board's obviousness determination for substantial evidence, I would also affirm the board's finding that claims 41-49 are obvious in light of Angles.

Because the advertisements sent to a consumer in Angles are based on the user's personal information and the advertisement hyperlinks "lead to a web page which is generated from some page data[,]" Board Decision, at 5-6, the board found that one may interpret Angles as teaching the third limitation in claim 41, "generating page data defining a web page based upon said personal information data." In Angles, hyperlinks are custom-selected for inclusion on an electronic page that shows up on the user's screen and can, therefore, reasonably be called "page data." The determination that the hyperlinks in Angles are "page data [that] defin[e] a web page" was reasonable because the hyperlinks, which can link a user to a web page, are custom-selected and included on the electronic page that shows up on a user's screen.

Finally, the board's construction of the term "generating," though broad, was not unreasonable. There is no limitation in the '198 application that prevents the term "generating" from being interpreted to allow preexisting customized page data, so long as the page data that is "generated" for the consumer is based on his specific user information, as done in Angles.